UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE FERGUSON,

                Plaintiff,                    Case No. 2:16-cv-13289
                                          District Judge Corbett O'Meara

v.                                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 19),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

        Plaintiff, Diane Ferguson, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

(DI) benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

14), the Commissioner's cross motion for summary judgment (DE 19) and the administrative record (DE 10).

## A.    Background

Plaintiff filed her application for DI benefits on January 14, 2014, alleging that she has been disabled since August 10, 2012.  (R. at 140-41.)  Plaintiff's application was denied, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 81, 86.)  ALJ Dawn M. Gruenburg held a hearing on August 27, 2015 ─ at which Plaintiff was represented by counsel.  (R. at 42-70.) The ALJ considered all of the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 25-41.)  On July 13, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  Thus, ALJ Gruenburg's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on September 13, 2016. (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff's combined medical records span the period from July 12, 1995 through December 18, 2015, and include complaints of back and shoulder pain, back spasms, obesity, and depression. (R. at 5-7, 238-731.)  However, Plaintiff's alleged onset date is August 10, 2012, and her date last insured is December 31, 2013.  (R. at 28.)  The 246 pages of medical records are mostly comprised of

2

hospital and treatment records and diagnostic tests, and the majority of the records pre- or post-date the relevant time period—between the alleged onset date and the date last insured.  (R. at 230-476.)

With respect to the relevant time period, Plaintiff was treated at Caring Heart Health Clinic beginning in July 2012, for complaints of spine pain and numbness in her legs, and was prescribed Neurontin.  (R. at 230-33.)  In August 2012, Plaintiff complained of shoulder pain and lumbar back pain with active range of motion. and she asked the nurse to complete disability paperwork for her.  (R. at 239-42).  At that time, the nurse restricted Plaintiff to lifting less than 10 pounds with her left arm and alternating activity with periods of rest.  (R. at 240, 243.)  An August 2012 x-ray of Plaintiff's left shoulder revealed significant changes of osteoarthritis and slight inferior subluxation suggesting the possibility of joint effusion.  (R. at 247, 362.)  Plaintiff continued to complain of back and shoulder pain at subsequent examinations in September and November 2012, March 2013, July 2013, and September 2013, and was prescribed various medications, including Flexeril, Motrin, Neurontin, Naproxyn and Ultram.  At these subsequent examinations, the nurse indicated that Plaintiff either could "resume usual activities," or otherwise did not note any restrictions.  (R. at 248-49, 253-54, 257-58, 260-61, 263-64.)   Plaintiff was seen again in February 2014 for complaints of

low back and sciatic pain and was prescribed Neurontin, Flexeril and Motrin, but the nurse again did not indicate any functional restrictions.  (R. at 266-67.)

Plaintiff also received chiropractic care during the relevant time period from Dr. David Varga, beginning on December 7, 2013, for complaints of pain in her entire spine and specifically radiating down into her left leg.  (R. at 276-77.)  She was seen several times until December 26, 2013, and reported relief from the treatments with pain described as 2-3/10.  (R. at 278-81.)  Plaintiff was next seen for chiropractic care monthly between January 7, 2014 and April 2014, and then again in June and July 2014, and continued to complain of soreness, stiffness and aching, and to describe her pain at generally 3-5/10.  (R. at 282-87, 382-85.)

The remaining medical records that pre- and post-date the relevant time period will be discussed as necessary below.

### C.    Hearing Testimony

Plaintiff testified at the August 27, 2015 hearing before ALJ Gruenburg.  (*See* R. at 42-70.)  Plaintiff testified she was 63 inches tall and 218 pounds, and the ALJ noted she had a Body Mass Index of 38.6, indicative of obesity.  (R. at 32, 46.)  Plaintiff testified that she could not work because of her back injury, bursitis in her shoulder, lower back spasms, and sciatic nerve problems.  (R. at 32, 47-48.)  She also stated she has problems with her left hand because of her left shoulder arthritis, numbness in both hands, and stated that she treats her depression with

4

herbs.  (R. at 32, 53-54, 57.)  She testified that she has difficulty standing after 10-15 minutes, can sit for 15-20 minutes, and can walk a block before needing to sit down.  (R. at 32, 48-49.)  Plaintiff testified she does very little yard work, cooks with her husband, helps with laundry and washing dishes, has trouble reaching overhead with her left arm, that pain disrupts her sleep and that she naps during the day.  (R. at 32, 50, 57-59, 62.)

### D.    The Administrative Decision

On October 1, 2015, ALJ Gruenburg issued an "unfavorable" decision.    At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period of her alleged onset date

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

of August 10, 2012 through her date last insured of December 31, 2013.  (R. at 30.)

At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:

dysfunction of the spine, dysfunction of major joint, upper back spasms, and

obesity.  (R. at 30-31.)  At **Step 3**, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments.  (R. at 31.)  Prior to **Step 4** of the

sequential process, the ALJ determined that Plaintiff has the residual functional

capacity ("RFC")[2] to:

> perform light work … except: this individual will need the option to
> sit and stand at 10 minute intervals; can occasionally push/pull with
> the non-dominant upper extremity; can frequently handle, finger, and
> feel with the non-dominant upper extremity; can occasionally climb
> stairs but never ladders; can frequently balance; occasionally stoop
> and crouch; can kneel; no crawling; and will need stable, even
> flooring.

(R. at 31-35.)  At **Step 4**, the ALJ concluded that Plaintiff is unable to perform any

past relevant work.  (R. at 35.)  At **Step 5**, the ALJ found that, considering

Plaintiff's age, education, work experience and RFC, there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform.  (R. at 35-

36.)

### E.    Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

7

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff's motion is disorganized and less than clear, but she appears to argue that the ALJ: (1) made impermissible credibility findings regarding Plaintiff's complaints of pain; (2) ignored the side effects of Plaintiff's medications; (3) improperly discounted Plaintiff's psychiatric impairments and failed to consider her lack of health insurance; (4) failed to properly consider medical record evidence post-dating the date last insured; and (5) did not present an adequate hypothetical to the vocational examiner (VE) at Step Five of the sequential analysis as required by *Sims v. Apfel*.  (DE 14 at 25-35.)  The Commissioner opposes Plaintiff's motion, asserting that she "levels multiple broad charges against the ALJ's decision," but "makes little effort to develop these arguments" which are "unaccompanied by citations to the evidence and generally devoid of meaningful analysis."  (DE 19 at 8.)  The Commissioner argues that Plaintiff has failed to show that her RFC is more limited than the ALJ determined, and that substantial evidence supports the Commissioner's decision.  (DE 19 at 6-12.)  Plaintiff filed a response to the Commissioner's motion, arguing that evidence after the date last insured, specifically including MRI reports, physical examinations and psychiatric treatment, should have been taken into consideration, and that the ALJ made impermissible medical findings and substituted her opinion for that of a medical expert.  (DE 20 at 1-3.)

9

### 1.  Plaintiff's Credibility

Plaintiff baldly asserts that the ALJ made an impermissible credibility finding, but she fails to properly develop this argument or provide any citations to the record in support of that argument.   (DE 14 at 25-26.)  It is well-settled that arguments such as this that are undeveloped may be treated as waived.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted); *see also White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) ("perfunctory" and "nebulous" argument renders an issue forfeited); *Davis v. Comm'r of Soc. Sec.*, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("[T]he Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

In any event, I conclude that the ALJ's credibility assessment ─ which took into consideration, *inter alia*, Plaintiff's failure to take prescribed medication, prior

10

ability to work despite a similar level of obesity, lack of treatment and

inconsistencies between the medical record and Plaintiff's complaints (R. at 32-34)

— is supported by substantial evidence. "It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the

claimant." *Rogers*, 486 F.3d at 247. A review of the ALJ's decision reveals that

she thoroughly reviewed: Plaintiff's testimony; the record evidence, including

evidence before, during and after the relevant time period between the alleged

onset date and date last insured; and, the third-party testimony of Plaintiff's

husband and daughter. (R. at 32-35.) The ALJ's "assessment of credibility is

entitled to great weight and deference, since he [or she] had the opportunity to

observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th

Cir. 2008). It is for this reason that the ALJ's credibility findings have at times

been characterized as "unchallengeable." *Payne v. Comm'r of Soc. Sec.*, 402 F.

App'x 109, 113-14 (6th Cir. 2010); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d

528, 536 (6th Cir. 2001) ("A circuit court ... may not review a determination of

credibility. It is for the Secretary and his examiner, as the fact-finders, to pass

upon the credibility of the witnesses and weigh and evaluate their testimony.")

(alteration omitted). Moreover, "[d]iscounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among the medical reports,

claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 537 (6th Cir. 1997). Plaintiff has failed to demonstrate that the ALJ's credibility determination is flawed. Accordingly, I find that the ALJ's credibility determination is supported by substantial evidence.

### 2. Side Effects of Medication

Plaintiff claims that the ALJ ignored the side effects of medications "which were repeatedly referred to in the medical record," but she points to no record citations in support of that assertion and she fails to otherwise explain how those side effects impacted her ability to work. (DE 14 at 26-27.) As explained above, arguments such as this that are undeveloped may be treated as waived. *See McPherson*, 125 F.3d at 995-96. Further, contrary to Plaintiff's assertion, a review of the ALJ's decision reveals that she thoroughly considered and analyzed the record evidence and that she did expressly consider Plaintiff's report that she stopped taking Neurontin in July 2012 and September 2013 because of the side effects and because it was not helpful. (R. at 32, 230, 263.) However, there is no evidence in the record that claimed side effects of the medications had any impact on Plaintiff's ability to work or otherwise imposed any functional limitations that are not accounted for in her RFC, and the ALJ's decision is supported by substantial evidence.

### 3. The ALJ Properly Considered Plaintiff's Psychiatric Impairments

Plaintiff asserts that the ALJ's decision improperly discounted her claimed psychiatric impairments and failed to take into account a lack of insurance or financial resources. (DE. 14 at 27, 35.) Again, this argument is undeveloped, lacks citations to the record, and may be treated as waived. *See McPherson*, 125 F.3d at 995-96. However, a review of the ALJ's decision shows that she plainly considered Plaintiff's psychiatric impairments, but found that Plaintiff had "no more than mild limitation in any of the four work-related functional areas" during the period in question, and thus she did not have a disabling mental impairment during the relevant time period between the alleged onset date and the date last insured. (R. at 33-34.) The ALJ expressly considered and summarized Plaintiff's medical records, including her mental health records before, during and after the relevant time period, and found that "there are no treatment notes or opinions indicating a disabling mental impairment during the period in question." (*Id*. at 34) The ALJ noted that Plaintiff sought medical care around the relevant time period, and that Fluoxetine was prescribed on November 6, 2012 for "reactive depression," but that the examinations in February and June 2012 otherwise generally revealed no depression, anxiety or agitation. (R. at 33, citing 253, 463, 468). On July 2, 2014, Dr. Mark English examined Plaintiff and noted: "alert, oriented, cognitive function intact, cooperative with exam, good eye contact, judgment and insight good, mood/affect full range, thought content without suicidal ideation, delusions,

13

thought process logical, goal directed," but on September 17, 2014, Dr. English

prescribed Celexa for depression.  (R. at 33-34, 294, 344.)  The ALJ also

acknowledged prior mental health records from 2006-2007 that include a discharge

note in January 2014, but observed that there were no records in the interim, and

that Plaintiff continued to work for many years thereafter, suggesting that mental

health concerns were not of a debilitating nature.  (R. at 34, 366-78.)

Plaintiff merely argues in her response to Defendant's motion for summary

judgment that the psychiatric conditions "should be evaluated more thoroughly and

not summarily dismissed."  (DE 20 at 2.)  However, the ALJ did not "summarily

dismiss[]" Plaintiff's record evidence, but rather thoroughly considered and

analyzed all of the medical record, including those pre-dating and post-dating the

relevant time period, and Plaintiff has failed to demonstrate how that analysis is

deficient.  Although the record has referred to a diagnosis of depression, the

records do not opine as to any functional limitations resulting from this

impairment.  It is well settled in the Sixth Circuit that "the mere diagnosis of an

impairment does not render an individual disabled nor … reveal anything about the

limitations, if any, it imposes upon an individual."  *See McKenzie v. Comm'r of

Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000); *see also

Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("There mere diagnosis of [a

condition], of course, says nothing about the severity of the condition.").  Thus, the

14

ALJ's decision fell within her "zone of choice," and Plaintiff has shown no error

warranting remand.  *See Mullen*, 800 F.2d at 545 (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the

decisionmakers can go either way, without interference by the courts").  Further,

despite Plaintiff's assertion that she should not be penalized for lack of insurance,

the record reveals that she did obtain medical care before, during and after the

relevant time period, and simply does not indicate that Plaintiff ever sought mental

health treatment from no-cost or low-cost providers during the relevant time

period. (R. at 33-34.) The ALJ therefore properly considered the record evidence in

making her findings.  *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 120

(6th Cir. 2016) (because the record indicates that plaintiff sought medical care, but

did not seek mental health treatment from no-cost to low-cost providers within his

community, the ALJ could reasonably conclude that his symptoms were not as

severe as alleged).

### 4.   The ALJ Properly Considered the Medical Record Evidence After the Date Last Insured

Plaintiff argues that the ALJ failed to properly take into account objective

test results that allegedly "exhibited disabling degenerative conditions" after the

date last insured.  (DE 14 at 22; DE 20 at 1-2.)  However, a review of the ALJ's

decision plainly reveals that she expressly considered all the record medical

evidence, before, during and after the relevant time period between the alleged

15

onset date and the date last insured.  (R. at 32-34.)  To be eligible for disability

insurance benefits, a person must become disabled *during* the period in which he

or she has met the statutory special earnings requirements.  42 U.S.C. §§

416(i)(2)(c); 423(a), (c), (d); 20 C.F.R § 404.130.  "If a claimant is no longer

insured for disability benefits at the time she files her application, she is entitled to

disability insurance benefits only if she was disabled before the date she was last

insured."  *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the

ALJ generally only considers evidence from the alleged disability onset date

through the date last insured.  *King v. Sec'y of Health & Human Servs.*, 896 F.2d

204, 205-06 (6th Cir. 1990).  "Evidence of disability obtained after the expiration

of insured status is generally of little probative value," *Strong v. Soc. Sec. Admin.*,

88 F. App'x 841, 845 (6th Cir. 2004), and is relevant to the disability decision only

if the evidence "relate[s] back to the claimant's condition prior to the expiration of

her date last insured."  *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th

Cir. 2003); *see also Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920

(6t Cir. 1987) (per curiam) (holding that a treating physician's opinion, based on a

treatment record that began eight months after the date last insured, was not

entitled to substantial weight).  If the plaintiff becomes disabled after the loss of

insured status, the claim must be denied even though she became disabled

16

thereafter. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

I find that, consistent with this case law, the ALJ properly considered the medical record evidence in this case. She did not ignore or wholly discount the record evidence before or after the relevant time period but instead properly considered whether that evidence "relate[s] back to the claimant's condition prior to the expiration of her date last insured," *see Wirth*, 87 F. App'x at 480, and concluded that the evidence "indicates significant progressive injury but only well after the date last insured." (R. at 32-32.) In her response to the Defendant's motion for summary judgment, Plaintiff points to a September 2014 MRI with "multiple objective findings," and asserts that there is no meaningful discussion of this evidence. (DE 20 at 1.) However, as stated above, the ALJ states that she did consider this evidence (R. at 33), and moreover, this report does not address any functional limitations resulting from the findings. As stated above, "the mere diagnosis of an impairment does not render an individual disabled nor ... reveal anything about the limitations, if any, it imposes upon an individual." *See McKenzie*, 2000 WL 687680, at *5. The ALJ gave Plaintiff "significant benefit of the doubt" (R. at 34), and accounted for her limitations by giving her an option to sit and stand at 10 minute intervals and imposing restrictions on pushing/pulling, frequent handling, fingering and feelings, and postural limitations. (*Id.* at 32-34.)

17

Plaintiff does not show how this MRI test finding or other subsequent record evidence would impose greater restrictions than those found by the ALJ in assessing Plaintiff's RFC.  Accordingly, the ALJ's decision is within her "zone of choice" and is supported by substantial evidence.

To the extent Plaintiff argues that Social Security Ruling (SSR) 83-20 "required the ALJ to call on the services of a medical expert to interpret the post-date last insured evidence" (DE 14 at 32-33), that argument fails.  SSR 83-20 recognizes that "[d]etermining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the distant past and adequate medical records are not available."  SSR 83-20.  Here, there are contemporaneous medical records during the relevant time period, and the ALJ considered these records, as well as records pre- and post-dating the relevant time period in reaching her decision.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836-37 (6th Cir. 2006) (finding no merit to plaintiff's claim that the ALJ erred by not requiring a medical expert to infer an onset date because plaintiff's medical record was well developed and carefully reviewed by the ALJ).  Further, as the Commissioner explains, SSR 83-20 does not apply to this case.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began.").  Instead,

18

"the only necessary inquiry is whether the claimant was disabled prior to the expiration of [her] insured status[.]" *Key*, 109 F.3d at 274.  The ALJ correctly evaluated the record evidence, which included documentation of Plaintiff's condition during the relevant time period, and determined that she was not disabled.

### 5.    The ALJ's Step 5 Determination is Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ did not comply with *Sims v. Apfel*, 530 U.S. 103 (2000), because she did not properly develop the record and the evidence does not support her finding that Plaintiff could do other work.  (DE 14 at 27-31.) Plaintiff claims, as she did above, that the ALJ's decision "failed to consider the psychiatric condition, the effect of pain medication, minimized the level of impairment and formulated an RFC that is inconsistent with a proper application of the rules and regulations."  (*Id.* at 28.)  She complains that the vocational testimony did not take into consideration being off task 15% of the day, which would preclude work.  (*Id.* at 31.)  However, Plaintiff fails to cite to any record evidence to support this limitation, and the ALJ was not required to include this limitation in the hypothetical to the vocational expert because it was not supported by the record evidence.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (ALJ not required to include in VE hypothetical limitations that are unsupported by the record).  Further, the ALJ properly questioned the VE about the impact of a

sit/stand option as defined in the decision, and the VE testified that such a limitation would reduce, but not preclude, the jobs the ALJ found Plaintiff could perform. (R. at 65-66.) The hypothetical question which the ALJ posted to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed a significant number of jobs. (R. at 65-66.) The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. I find, therefore, that the ALJ properly relief upon the vocational expert's testimony.

### G. Conclusion

In sum, the ALJ's opinion is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 22, 2018           s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on January 22, 2018, electronically and/or by U.S. Mail.

s/Michael Williams

Case Manager for the

Honorable Anthony P. Patti
